___

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: January 4, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.
___

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE: RICHARD DANA JETT and JANICE LAVERNE JETT | CASE NO. 16-51503-KMS |
| | CHAPTER 13 |
| DEBTORS | |

**ORDER OVERRULING OBJECTION TO CONFIRMATION AND**
**SUSTAINING OBJECTION TO SECURED CLAIM**

Before the Court are the Objection to Pre-Petition Secured Claim of Community Bank (Dkt. No. 10) filed by Richard Dana Jett and Janice Laverne Jett and the Objection to Confirmation of Plan (Dkt. No. 32) filed by Community Bank. The Court held a hearing on the objections on October 13, 2016. Dkt. Nos. 50, 51. After the hearing, the Court requested additional briefing from the parties. Having considered the arguments and evidence in this case, the Court finds that the Objection to Claim is sustained and that the Objection to Confirmation is overruled.

I. Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (L), & (O).

1

II. Findings of Fact[1]

Richard Dana Jett and Janice Laverne Jett filed a petition for Chapter 13 relief on September 1, 2016. Dkt. No. 1. The Jetts scheduled a 2013 Dodge Avenger valued at $10,012.50 with a secured claim held by Community Bank in the amount of $19,000.00. Dkt. No. 6 at 3, 11. The same day that they filed their petition, the Jetts objected to Community Bank's secured claim, proposing to cramdown the claim—meaning bifurcate it into secured and unsecured portions—if allowed under the Bankruptcy Code. Dkt. No. 10 at 1. Community Bank objected to the Jetts' proposed plan. Dkt. No. 32 at 1. Community Bank has not yet filed a proof of claim in the Jett's case, but the deadline does not run until January 17, 2017.

On January 14, 2015, prior to filing bankruptcy, the Jetts obtained a loan from Community Bank for $20,915.41 to purchase a 2013 Dodge Avenger and gave Community Bank a security interest[2] in the vehicle ("the first secured loan"). Dkt. No. 60 at 1. On February 19, 2015, Community Bank made an unsecured loan to the Jetts in the amount of $4,277.80, and on August 20, 2015, Community Bank made a second unsecured loan to the Jetts in the amount of $2,777.90. Dkt. No. 60 at 1. Community Bank made one more loan to the Jetts ("the second secured loan"):

> On April 28, 2016, the debtors renewed the original January 14, 2015 loan in the amount of $20,790.50. The renewal loan remained secured by the 2013 Dodge Avenger. Proceeds from the renewal loan in the amounts of $2,037.63 and $2,032.15 were used to pay off the two unsecured loans.

Dkt. No. 60 at 2.

---

[1] Pursuant to Federal Rule of Civil Procedure 52, made applicable here by Federal Rules of Bankruptcy Procedure 9014(c) and 7052, the following constitutes the findings of fact and conclusions of law of the Court.

[2] The Court notes that Community Bank has only produced documentary proof of the security interest taken in the first secured loan and of some of its contracts. *See* Dkt. No. 32-1. Because the claims deadline has not run and because the Jetts did not contest the facts as presented by Community Bank, the Court accepts them as true for purposes of this opinion. Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact . . ., the court may: . . . consider the fact undisputed for purposes of the motion. . . ."); *see also* Fed. R. Bankr. P. 7056 (applying Federal Rule of Civil Procedure 56 to adversary proceedings); Fed. R. Bankr. P. 9014 (applying Federal Rule of Bankruptcy Procedure 7056 to contested matters).

2

III. Conclusions of Law

The Jetts argue that the second secured loan destroyed the purchase money character of their debt. Community Bank argues to the contrary that the Jetts cannot cramdown the claim to pay only the secured value because it is subject to the "hanging paragraph" of Section 1325. This section prohibits bifurcation of a claim

> if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor. . . .

11 U.S.C. § 1325(a)(*) (2010).

> Simply restated, the hanging paragraph prohibits the bifurcation of a claim . . . if four requirements are met: (1) the creditor has a purchase money security interest which secures the debt; (2) the debt was incurred within 910 days of the date the petition was filed; (3) the collateral securing the debt is a motor vehicle; and (4) the motor vehicle was acquired for the personal use of the debtor.

*In re Busby*, 393 B.R. 443, 448 (Bankr. S.D. Miss. 2008). Only the first element is at issue in this case. As a preliminary matter, the Court finds that the first secured loan meets the anti-bifurcation protection of the hanging paragraph, so the Court must determine whether the second secured loan changed the purchase money nature of the loan sufficiently to remove it from operation of this section.

    A.  Purchase Money Security Interest

The Court turns to Mississippi law to define a purchase money security interest. *Ford Motor Credit Co., LLC v. Dale (In re Dale)*, 582 F.3d 568, 573 (5th Cir. 2009) ("Because the Code does not define 'purchase-money security interest' and that term does not have a common ordinary meaning, we agree with the great majority of courts to address this issue that state UCC law must be used to define the hanging paragraph's phrase 'purchase-money security interest.'"). "A security interest in goods is a purchase-money security interest . . . [t]o the extent that the goods are

3

purchase-money collateral with respect to that security interest. . . ." Miss. Code Ann. § 75-9-103(b)(1) (2002). "'Purchase-money collateral' means goods or software that secures a purchase-money obligation incurred with respect to that collateral. . . ." § 75-9-103(a)(1). And "'[p]urchase-money obligation' means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." § 75-9-103(a)(2). In short, a purchase money security interest is an interest taken in goods securing a loan made for the purchase of those same goods.

The Fifth Circuit has previously examined the definition of purchase money security interest. *In re Dale*, 582 F.3d at 573-75. The *Dale* court examined Texas statutes which are identical to the Mississippi statutes at issue. *See In re Busby*, 393 B.R. at 449. In *Dale*, the Fifth Circuit held that "[t]he definition of 'purchase-money obligation' . . . contains two prongs: (i) the price of the collateral, and (ii) value given to enable the debtor to acquire rights in or use of the collateral." *In re Dale*, 582 F.3d at 573. And regardless of "whether the transaction at issue is one where the seller extends credit, or where the buyer obtains funds from a third-party lender[,]" the creditor need only satisfy one of the prongs to have its debt declared a purchase money obligation. *Id.* at 573-74. Texas, like Mississippi, adopted the Official Uniform Commercial Code comments[3] to its statute; in relevant part, it states that

> [T]he definition of "purchase-money obligation," the "price" of collateral or the "value given to enable" includes obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations.
>
> The concept of "purchase-money security interest" requires a close nexus between the acquisition of collateral and the secured obligation. Thus, a security interest does not qualify as a purchase-money security interest if a debtor acquires property

---

[3] The Fifth Circuit reiterated in *Dale* that "Official UCC Comments are 'by far the most useful aids to interpretation and construction.'" *In re Dale*, 582 F.3d at 574 (quoting *Weathersby v. Gore*, 556 F.2d 1247, 1256 (5th Cir. 1977)).

4

>on unsecured credit and subsequently creates the security interest to secure the purchase price.

Tex. Bus. & Com. Code Ann. § 9.103, Official Comment 3; *see also* Miss. Code Ann. § 75-9-103, Official Comment 3 (same). Based on these comments, the Fifth Circuit found that price and value given are not "limited to the price tag of the vehicle standing alone" but may include any debt with "an attenuated connection to the acquisition or maintenance of the vehicle." *In re Dale*, 582 F.3d at 574. The Fifth Circuit held that based on these definitions, "[n]egative equity financing,[4] gap insurance, and extended warranties are properly considered expenses incurred by the creditor in connection with the buyer's goal of acquiring rights in the collateral" and are included in the purchase money nature of a debt. *Id.* at 575. In this case, however, the money loaned to pay off the earlier unsecured loans clearly bears no connection to the purchase of a vehicle and cannot be part of a purchase money obligation. Because the Court previously found that the first secured loan created a purchase money security interest, the Court must now determine whether the purchase money character of the debt survived the second secured loan. To make that determination, the Court chooses between application of either the transformation rule or dual status rule.[5]

    B. Transformation Rule or Dual Status Rule

As already stated, Community Bank's original interest in the vehicle was a purchase money security interest.

>There is a split of authority among the circuits concerning whether a purchase money security interest is extinguished when the original purchase money loan is refinanced through renewal or consolidation with another obligation. *In re Short*, 170 B.R. 128, 133 (Bankr. S.D. Ill. 1994). One line of cases follows the

---

[4] "The term negative equity is a term of art and is not defined in the Bankruptcy Code, Black's Law Dictionary or the Uniform Commercial Code. It is a term commonly used in the automobile industry to describe the difference between a vehicle's outstanding loan balance and the vehicle's market value." *In re Busby*, 393 B.R. at 447 n.4.

[5] Other courts have decided similar cases without resort to this choice. For example, courts in the Seventh Circuit apply a renewal or novation test looking at "the degree to which the original obligation of the debtor has changed" to determine whether a purchase money security interest survives a refinancing of the debt. *In re Naumann*, No. 09-32092, 2010 WL 2293477, at *3 (Bankr. S.D. Ill. June 8, 2010).

> "transformation rule," which holds that a purchase money security interest is transformed into a nonpurchase money security interest when the proceeds of a renewal note are used to satisfy the original note because the collateral now secures an antecedent debt rather than a debt for the purchase of the collateral. *Id.* The other line of cases follows the "dual status rule," which holds that a lien may be partially purchase money and partially nonpurchase money and that the purchase money aspect of a lien is not automatically destroyed by refinancing or consolidation with another debt. *Id.*

*In re Naumann*, No. 09-32092, 2010 WL 2293477, at *2 (Bankr. S.D. Ill. June 8, 2010). The Fifth Circuit has not explicitly held that either the dual status or transformation rule applies in the context of the hanging paragraph.[6] Mississippi's commercial code leaves the choice between the two rules within the discretion of the courts in a transaction involving consumer goods. *See* Miss. Code Ann. § 75-9-103(h).

The Court notes that no published bankruptcy decision within the Fifth Circuit has discussed either rule since the Fifth Circuit decided *In re Dale*.[7] But many other courts have addressed this question:

> Courts in the First, Fourth, Sixth, Eighth, Ninth, and Eleventh Circuits follow the transformation rule, which states that a purchase money security interest is automatically transformed into a non-purchase money interest when the proceeds of a refinanced loan are used to satisfy the original loan . . . Courts in the Third, Eighth, Ninth, and Tenth Circuits, by contrast, have followed the dual status rule, which allows a security interest to have both the status of a purchase money security interest to the extent that it is secured by collateral purchased with loan proceeds, and the status of a general security interest, to the extent that the collateral secures obligations unrelated to its purchase.

*In re Huddle*, No. 06-11076, 2007 WL 2332390, at *3-4 (Bankr. E.D. Va. Aug. 13, 2007) (citing *Gillie v. First State Bank of Morton, Tex. (In re Gillie)*, 96 B.R. 689, 691-92 (Bankr. N.D. Tex.

---

[6] "Preceding the inception of the 'hanging paragraph' in 2005, the Fifth Circuit Court of Appeals . . . adopted what has since become known as the transformation rule, although not using that term." *In re Spears*, No. 16-00575, slip op. at 6 (Bankr. S.D. Miss. Sept. 6, 2016) (citing *Roberts Furniture Co. v. Pierce (In re Manuel)*, 507 F.2d 990 (5th Cir. 1975)). Courts that have examined *In re Manuel* "have unanimously concluded that the Fifth Circuit applied the transformation rule." *Id.* slip op. at 6-7 (listing cases).

[7] Some unpublished decisions have discussed the two rules without acknowledging the Fifth Circuit decision. *See, e.g., In re Spears*, No. 16-00575, slip op. at 6-10.

1989)).[8] "One court has appropriately described the [case law choosing between the two rules] as a 'maddeningly inconsistent body of decisions.'" *Graupner v. Nuvell Credit Corp. (In re Grauper)*, 537 F.3d 1295, 1300 (11th Cir. 2008) (quoting *In re Westfall*, 376 B.R. 210, 213 (Bankr. N.D. Ohio 2007)). This Court agrees and therefore focuses its attention on the cases within the Fifth Circuit that apply these rules.

The majority of cases applying the dual status rule have done so in the context of negative equity.[9] *See In re Busby*, 393 B.R. at 449-51; *In re Brodowski*, 391 B.R. 393, 401-02 (Bankr. S.D. Tex. 2008); *In re Dale*, No. 07-32451-H5-13, 2007 WL 5493483, at *6 (Bankr. S.D. Tex. Sept. 17, 2007) *overruled by* 582 F.3d at 575. Two courts have found that Texas state law[10] mandated application of the dual status rule in consumer goods transactions. *In re Palmer*, 123 B.R. 218, 221 (Bankr. N.D. Tex. 1991); *Crispin v. Norwest Fin. (In re Crispin)*, 139 B.R. 187, 189-91 (Bankr. E.D. Tex. 1992). Other courts have applied the transformation rule to cases involving revolving credit. *See In re Shaw*, 209 B.R. 393, 397 (Bankr. N.D. Miss. 1996); *In re Spears*, No. 16-00575, slip op. at 10-14. The Fifth Circuit itself applied the transformation rule to revolving credit, albeit decades before the hanging paragraph became law. *Roberts Furniture Co. v. Pierce (In re Manuel)*, 507 F.2d 990, 993 (5th Cir. 1975). And one court applied the transformation rule where a lender

---

[8] Since the *Huddle* decision, the Ninth Circuit Bankruptcy Appellate Panel has adopted the dual status rule, *Americredit Fin. Serves, Inc. v. Penrod (In re Penrod)*, 392 B.R. 835, 860 (B.A.P. 9th Cir. 2008), but, on appeal, the Ninth Circuit Court of Appeals affirmed the decision without "address[ing] whether the dual status rule or the transformation rule should apply" and noting some criticism of the Bankruptcy Appellate Panel's choice, 611 F.3d 1158, 1160 n.2 (9th Cir. 2010). A review of the cases supporting the inclusion of the Eighth Circuit in both lists shows that only lower courts in that Circuit have addressed the question, coming to different conclusions, but the Eighth Circuit itself has not held whether the dual status or transformation rule should apply.

[9] One case that examined the hanging paragraph in the context of negative equity rejected the dichotomy of the two rules and held that the hanging paragraph applies only where the entire debt is a purchase money obligation. *In re Sanders*, 377 B.R. 836, 858 (Bankr. W.D. Tex. 2007). This case was reversed by the district court which found this interpretation of the handing paragraph to be in error. 403 B.R. 435, 444-45 (W.D. Tex. 2009).

[10] The Texas Consumer Credit Code, the statutes relied on by the *Palmer* and *Crispin* courts, has since been repealed and replaced with the Texas Finance Code. *See Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 353 (Tex. 2001) (noting the recodification); *see also* Tex. Fin. Code Ann. §§ 345.051 – 345.083.

7

made later loans taking a security interest in collateral that had been purchased in the original loan. *In re Gillie*, 96 B.R. at 690.

The Court finds that all of the cases in this Circuit applying the dual status rule are distinguishable. Most involved negative equity and the Fifth Circuit has held that such equity is part of the purchase price thus invalidating the need to address the dual status rule in those situations. And the Court is aware of no Mississippi law similar to that of Texas[11] that requires application of the dual status rule in consumer goods transactions. Second, the cases applying the transformation rule are analogous to these facts. The *Manuel* court held that a "purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created. . . ." *In re Manuel*, 507 F.2d at 993. Where no goods are purchased with the money obtained by loan, no purchase money security interest is created. And where a second loan of additional funds takes a security interest in purchase money collateral from a prior loan, the purchase money character of that original collateral is lost.[12]

This interpretation finds support among other courts that have declined to call their decisions an application of the transformation rule by name. *See, e.g., Matthews v. Transamerica Fin. Servs. (In re Matthews)*, 724 F.2d 798, 800-01 (9th Cir. 1984) (collecting cases) ("The vast majority of courts that have considered the issue we face here have held that refinancing or consolidating loans by paying off the old loan and extending a new one extinguishes the purchase money character of the original loan because the proceeds of the new loan are not used to acquire rights in the collateral."); *Snap-On Tools, Inc. v. Freeman (In re Freeman)*, 956 F.2d 252, 254-55

---

[11] In fact, the only other state that appears to have a similar statute is Illinois. *See* 815 Ill. Comp. Stat. Ann. §§ 405/1 – 405/33.

[12] The *Manuel* court seems to recognize that a purchase money security interest can exist in such a transaction but only as to a new good purchased with that additional money. *In re Manuel*, 507 F.2d at 993. The *Shaw* court interpreted *Manuel* this way and allowed a purchase money security interest in only the most recent purchase on a revolving credit account. *In re Shaw*, 209 B.R. at 397.

(11th Cir. 1992) ("A security interest in collateral is 'purchase money' to the extent that the item secures a debt for the money required to make the purchase. If an item of collateral secures some other type of debt, e.g., antecedent debt, it is not purchase money.").

**IT IS THERFORE ORDERED THAT** the Objection to Pre-Petition Secured Claim of Community Bank (Dkt. No. 10) filed by Richard Dana Jett and Janice Laverne Jett is SUSTAINED.

**FURTHER ORDERED THAT** the Objection to Confirmation of Plan (Dkt. No. 32) filed by Community Bank is OVERRULED.

*##END OF ORDER##*